## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Priscilla Saunders and<br>Jason Branden | Court File No. 13-cv-1972 (JNE/HB) |
| **Plaintiffs,** | |
| vs. | **MEMORANDUM OF LAW IN<br>OPPOSITION TO PLAINTIFFS'<br>MOTION TO EXCLUDE EXPERT<br>TESTIMONY OF BRUCE ADELSON** |
| Mayo Clinic, | |
| **Defendant.** | |

## INTRODUCTION

Plaintiffs Priscilla Saunders and Jason Branden ("Plaintiffs") seek an order from this Court striking the ***entire*** Expert Report ("Report") authored by expert witness Bruce Adelson ("Mr. Adelson"). Plaintiffs also appear to seek an order from the Court barring Mr. Adelson from offering ***any testimony*** in this matter. In support of their attempt to "nuke" Mr. Adelson's testimony, Plaintiffs can muster only the following three justifications: (1) the Report "contains legal opinions"; (2) Mr. Adelson's opinions are "based on non-scientific, [and] unreliable methods"; and (3) because of Mr. Adelson's work experience, his testimony will "certainly be unfairly prejudicial to . . . Plaintiffs." However, Plaintiffs' arguments do not withstand serious scrutiny, and certainly none of these arguments justify the exclusion of Mr. Adelson's testimony and report in their entireties.

As an initial matter, Plaintiffs misrepresent the substance of Mr. Adelson's testimony. As set forth below, Mr. Adelson's report is not entirely "comprised of legal

conclusions addressing the ultimate legal question of the case." Indeed, his report includes opinions regarding industry practices as to the provision of language services for individuals with hearing impairments, how healthcare provides can improve the communication between the interpreter and hearing-impaired patients, how individuals with different types of ASL skills communicate, and how healthcare providers can work with such individuals in order to improve communication.

Second, Plaintiffs' attempt to exclude alleged legal opinions is premature and should be raised in a motion *in limine* prior to trial. Nonetheless, to the extent the Court addresses the substance of Plaintiffs' objections, while Plaintiffs may quibble with Mr. Adelson's use of phrases such as "well-recognized" or "well-settled," they do not appear to challenge Mr. Adelson's characterization of the state of the law in these areas. Additionally, even if the Court were to conclude Mr. Adelson's report contains some inadmissible legal conclusions (which Mayo disputes), the bulk of his opinions and anticipated testimony are relevant, reliable, and should not be excluded.

Third, Plaintiffs' claim that Mr. Adelson's testimony is irrelevant and unreliable is based on a fundamental misunderstanding of the law regarding expert witness testimony, particularly as applied in this case. At best, Plaintiffs' arguments as to this issue may be proper cross-examination material at trial attacking the weight of Mr. Adelson's testimony, but they are not a basis to exclude expert testimony altogether.

Finally, Plaintiffs' claim that Mr. Adelson's experience as a Department of Justice attorney causes his testimony to be "unfairly prejudicial" is nonsensical. Indeed, an individual who helped the agency bring suit against non-compliant entities would more

709554.v4

likely be biased against the covered entity than against the individual purporting to seek the benefits the agency is tasked with enforcing. Moreover, the fact that Mr. Adelson is drawing on his experiences enforcing the laws and regulations at issue in this case makes his testimony more probative, not less, and it certainly is not rendered inadmissible simply because it might ultimately be detrimental to Plaintiffs' case.

For these reasons, the Court should deny Plaintiffs' motion to exclude the entirety of Mr. Adelson's testimony.

## FACTUAL BACKGROUND[1]

Mr. Adelson was retained by Defendant Mayo Clinic ("Mayo") to provide expert testimony regarding the following areas: (1) his experience with the effectiveness of communication standards under Title III of the ADA, (2) his knowledge of the standard practices by healthcare providers in providing interpreting services to patients with hearing impairments, and (3) his experience with the process by which places of public accommodation communicate with deaf individuals in order to ensure the most effective communication. (Expert Op. of Bruce L. Adelson 4 (hereafter "Report __.")[2]

---

[1] Mayo objects to Plaintiffs' "Statement of the Facts" as irrelevant to the admissibility of Mr. Adelson's expert testimony. (See Pltfs. Memo. 2-8 [ECF No. 36].) Accordingly, Mayo will not attempt to correct the record, but rather, refers the Court to the Statement of Undisputed Material Facts set forth in Mayo's Memorandum in Support of Summary Judgment at 3-19 [ECF No. 43].

[2] Mr. Adelson's Expert Report is attached as Exhibit I to the Affidavit of Heather M. Gilbert, Esq. [ECF No. 37-2 at 14-38].

709554.v4

A.      **Qualifications and Work Experience.**

Mr. Adelson received a Bachelor of Arts degree from The Johns Hopkins University and a Juris Doctor from the University of Pittsburgh School of Law. (Id. at 2.) After working as an attorney in private practice from approximately 1983 until 2000, Mr. Adelson began working as a Senior Trial Attorney and Attorney Advisor for the U.S. Department of Justice ("DOJ"), Civil Rights Division. (Id. at 2.) As part of his work for the DOJ, Mr. Adelson gained experience and expertise in areas of federal law, including but not limited to the Americans with Disabilities Act (ADA). (Id.)

While working for the DOJ, Mr. Adelson participated in educational programs sponsored by the DOJ that related to compliance with various federal laws, including the ADA. (Id. at 2-3.) These educational programs addressed areas such as:

> [W]orking with deaf and hard of hearing people; and working with [ASL] and spoken language interpreters, which includes but is not limited to the most effective physical placement of interpreters for deaf and hard of hearing people to understand the surrounding communication, eye contact among the interpreter, deaf or hard of hearing person, and the oral language speaker, and interactions among all people involved in a signed conversation.

(Id. at 3.)

Since 2006, Mr. Adelson has worked as the CEO of Federal Compliance Consulting LLC, which is a law and consulting firm based in Potomac, Maryland. (Id. at 1.) According to Mr. Adelson,

> [He is] regularly contacted and consulted by health care providers, non-profits, language services providers, disability advocacy organizations, state and local government agencies, and other organizations with compliance questions concerning various federal laws, including but not limited to the ADA and Rehabilitation Act. A large number of the consultation requests

4

and inquiries that [he] receive[s] involve the effective communication requirements of the ADA, ADA auxiliary aids and services, reasonable accommodations under the ADA, and working with sign language and spoken language interpreters.

(Id. at 1.) He has an impressive list of public and private-sector clients that he has either lectured at or provided technical assistant to regarding federal compliance, including the ADA and Rehabilitation Act. (Id.)

### B.      Previous Expert Testimony.

Mr. Adelson has been retained as an expert witness in at least five federal and state cases involving compliance with federal standards governing accessibility and communication. These cases include the following:

- Nick, et al., v. City of Bethel, et al., Case No., 3:07-cv-00098-TMB, (D. Alaska). Mr. Adelson was retained as an expert "in Title VI of the Civil Rights Act of 1964, federal language assistance, and federal accessibility requirements as they pertain to health care."

- Flores-Rios v. Memorial Hospital, Case No. 2009-cv-3549, (El Paso County District Court, Colorado). Mr. Adelson was retained "as an expert in Title VI of the Civil Rights Act of 1964, federal language assistance, and federal accessibility requirements as they pertain to health care."

- Braunstein v. The State of Arizona, Case No. CV06-02726-PHX-JWS, (D. Arizona). Mr. Adelson was retained "as an expert in the federal Disadvantaged Business Enterprise (DBE) program and Title VI of the Civil Rights Act of 1964."

- Hall v. State of Louisiana et al., Case No. 3:12-cv-657 (M.D. La.). Mr. Adelson was retained "as an expert in redistricting" as it pertains to The Voting Rights Act of 1965 and the U.S. Constitution.

- Harris et al., v. Wayne County Airport Authority, Case No. 2: 14-cv-13630-DML, (E.D. Mich.). Mr. Adelson was retained "as an ADA expert."

(Id. at 4.)

Most recently, on November 18, 2014, Chief Judge Jackson of U.S. District Court for the Middle District of Louisiana qualified Mr. Adelson as an expert at trial in the case of <u>Hall et al. v. State of Louisiana et al.</u>, Case No. 3:12-cv-657, Minute Entry, ECF No. 538 (M.D. La. Nov. 18, 2014). Chief Judge Jackson qualified Mr. Adelson as an expert in several areas, including federal civil rights laws and investigation of discrimination complaints. <u>See id.</u> In that case, Judge Jackson denied the plaintiffs' motions to strike Mr. Adelson's report and testimony. <u>Id.</u>, Order, ECF No. 461 at 2 (July 28, 2014) ("For reasons given by the Court, . . . [t]he Motion in Limine to Limit Expert Report and Testimony of Bruce Adelson (Doc. 334) . . . [is] denied.).

## C.    <u>Expert Opinion.</u>

In forming his expert opinions, Mr. Adelson reviewed substantial materials relating to this case, including Saunders' medical records, deposition transcripts, and documents produced through discovery. (<u>Id.</u> at 5.) Mr. Adelson also reviewed DOJ materials and federal court decisions to assist him in making his expert opinions. (<u>Id.</u>) In forming his expert opinions, Mr. Adelson also relied on his experience while working at the DOJ as well as his experiences since 2006 consulting with health care providers regarding ADA compliance. (<u>Id.</u>)

For analytical purposes, Mr. Adelson's expert report can be divided into three parts: (1) quotations from legal sources and the record; (2) opinions regarding industry norms and practices based on Mr. Adelson's experience at the DOJ and as a consultant working with organizations that utilize interpreters for hearing-impaired individuals; and

(3) opinions based on Mr. Adelson's understanding of the law as it relates to the ADA and Rehabilitation Act.

## 1.    Quotations from Legal Sources and the Record.

Throughout his Report, Mr. Adelson quotes extensively from the record, including deposition testimony and documents produced during discovery. (<u>See, e.g.</u>, Report 11-13, 19, 22.) Mr. Adelson also quotes from legal authority, including federal regulations, administrative guidance, and legal opinions, in order to provide context for his opinion. (<u>See, e.g.</u>, <u>id.</u> at 6, 21.)

Notwithstanding Plaintiffs' objection to Mr. Adelson's alleged "legal conclusions," Plaintiffs do not appear to question the accuracy of his quotations from legal resources. (<u>See generally</u> Pls.' Memo.) Moreover, Plaintiffs do not suggest that Mr. Adelson incorporated information that was either irrelevant or improperly applied to this case.

If called at trial, Mayo would not be asking Mr. Adelson to quote from federal regulations, legal treatises, or case law during a direct examination. However, the use of such materials in his expert report is appropriate to provide context and support for his subsequent opinions.

## 2.    Testimony Regarding Industry Norms and Practices.

Drawing on his experiences at the DOJ and as a consultant for various organizations, including health care providers, Mr. Adelson opines on Mayo's practices relating to providing language services for individuals with a disability. For example, Mr. Adelson provides the following testimony:

7

- Mayo had "enhanced appreciation and understanding of the need to accommodate language services and accommodation requests from patients and their companions." (Report 7.)

- Mayo's mandatory trainings regarding its Interpreter and Language Access policies were "atypical among U.S. health care providers and in fact exceeded the situations of most U.S. health care providers. . . ." (Id. at 7-8.)

- "Mayo Clinic's training program, training record, and staff knowledge about requesting interpreters and ADA accommodations are well above that of the average U.S. hospital during the time period at issue in this case." (Id. at 8.)

- "Using both staff and contract interpreters is a best practice, in my opinion. I also opine that a hospital, such as Mayo, preferring to use its staff interpreters is also a best practice since staff interpreters will generally be more available and known to a hospital than contract interpreters." (Id. at 18.)

In addition, Mr. Adelson's work experience exposed him to improve the communication between an interpreter and an individual with a hearing impairment. (Id. at 3.) Drawing on these experiences, Mr. Adelson offers his opinions regarding typical types of interactions between these individuals:

- "If an interpreter or deaf person asks to slow down another's sign language speech to facilitate understanding and communication, such a request is not dispositive of the requester's language proficiency or sign language interpreter qualifications, in my opinion. Indeed, such a request as well as interpreter or patient requests for sign language clarification, in my experience working with interpreters, attending interpreter conferences as a keynote or featured speaker, consulting with health care providers and in my expert opinion, is not per se problematic and conversely, may well facilitate understanding between speakers to achieve effective communications." (Id. at 9.)

- "In my experience working and consulting with health care providers and health care interpreters, both spoken language and sign language, I do not recall a situation in which an interpreter had 100% comprehension of what someone told the interpreter, in spoken or sign language, without asking for clarification and am similarly unaware of situations where either an interpreter or a deaf/hard of hearing person did not occasionally "slow down" or adjust his/her communication pattern to better understand the other person's communication." (Id. at 10.)

Mr. Adelson also explains how individuals with different types of ASL skills and healthcare providers can work to improve communication:

- "In my experience and it is my opinion that deaf patients who are native ASL speakers, i.e., patients who are deaf themselves and/or who grew up in families with deaf parents and/or siblings, and vibrantly part of the Deaf Community and Deaf Culture, more often than not are more comfortable with and prefer ASL interpreters who are also native ASL speakers like themselves." (Id. at 9.)

- "[I]n my experience, I have seen and/or learned of various sign language communication methods that provided effective communication between health care provider and deaf/hard of hearing patient: Pidgin English, Spanish sign language, certified Deaf interpreter, and more. In my experience, I have also learned of families with their own type of sign language, where family members are deaf and have developed their own sign language system, borrowing sometimes from ASL and other types of signing systems and languages. These family members did not understand ASL. When hospitals provided ASL interpreters, family members could not understand them. Eventually, the hospitals were able to construct communication systems to provide effective communications, but only after meetings occurred among the hospital, family members, patients, and various spoken and sign language interpreters that enabled the hospitals to understand fully the deaf patients' communication needs and preferences." (Id. at 14.)

- "During my DOJ career, I conducted myriad investigations of many organizations' federal civil rights compliance and learned how to evaluate organizations' willingness and motives concerning compliance by examining their patterns and practices. An organization's willingness to meet with and learn about compliance considerations from one entity, as Mayo did with DHHS, invariably indicated a similar willingness to meet with like entities or individuals, as Mayo would have with plaintiffs if plaintiffs had not rebuffed Mayo's efforts to do so." (Id. at 17-18.)

- "[A] NAD Level III certification, by itself, does not reveal more than that a Level III certified interpreter possesses above average voice-to-sign skills, and good sign-to-voice skills, and demonstrates the interpreting skill necessary for some situations. Individual interpreters possess their own talents and skills. A NAD III may well be able to interpret effectively in medical situations, in my opinion, especially where the patient is a full participant and fully informs the health care provider about specific communication needs, preferences, and requests." (Id. at 20.)

In their Memorandum objecting to Mr. Adelson's testimony, Plaintiffs do not specifically object to any of the testimony outlined above. (See Pls.' Memo. 11-16.) As a result, this Court should deny Plaintiffs' request to strike this otherwise admissible testimony.

### 3.   Opinions Regarding the ADA and Rehabilitation Act.

Mr. Adelson is a licensed attorney who has an intricate understanding of the legal contours of both the ADA and Rehabilitation Act. (Id. at 3.) He has also worked for the DOJ, which is the agency tasked with implementing and enforcing the relevant provisions of the ADA and its underlying regulations. Additionally, Mr. Adelson has spent the last eight years assisting covered entities with compliance questions concerning the ADA and Rehabilitation Act, as well as other federal statutes and regulations. (Id. at 1.)

In his Report, Mr. Adelson offers two forms of opinions that relate to the law: (1) testimony regarding his understanding of the "state of law" in areas relating to the ADA and the Rehabilitation Act and (2) testimony that applies his understanding of the law to the facts of the case. The following examples demonstrate the former type of testimony:

- "[T]here is no federal requirement that ASL interpreters also be deaf, hard of hearing, or that they grew up in families with deaf parents and/or siblings." (Id. at 9.)

- "[I]t is well-settled that disabled patients do not have a federal right to have a specific individual act as their interpreter . . . ." (Id. at 13.)

- "While it is axiomatic that an ADA Title III entity such as Mayo shall not require a disabled individual to bring another person to interpret for her, an ADA Title III entity may rely upon a family member to interpret for the deaf or hard of hearing patient or facilitate communication for her . . . ." (Id. at 14.)

10

- "I am unaware of any ADA regulation or rule, federal court decision, or any DOJ guidance or related materials that would prohibit Mr. Branden from interpreting for Ms. Saunders as occurred in the instant case." (Id. at 14.)

- "It is well-settled that federal law does not require ADA Title III entities such as Mayo to provide ASL or other sign language interpreters for all or specific communications with deaf/hard of hearing patients." (Id. at 20.)

Examples of Mr. Adelson's proposed testimony that consists of him applying his understanding of the law to facts from the case include the following:

- Mayo "provided plaintiffs with appropriate auxiliary aids corresponding to the circumstances in this case." (Id. at 6.)

- "Mayo still provided effective communications to plaintiffs through various accepted and compliant communication methods, as I opine and infer herein." (Id. at 10.)

- "Mayo neither retaliated against nor intentionally discriminated against Priscilla Saunders and/or Jason Branden within the meaning of the Rehabilitation Act." (Id. at 21.)

- "Mayo acted in good faith, provided reasonable accommodations to plaintiffs, complied with DOJ's recommendation encouraging ADA Title III entities to consult with deaf/hard of hearing patients about their communication preferences and requests, and provided plaintiffs with appropriate auxiliary aids corresponding to the circumstances in this case." (Id. 21.)

Although Plaintiffs object to Mr. Adelson's proposed testimony with respect to the state of the law, Plaintiffs do not appear to disagree with Mr. Adelson's conclusion. (See, e.g., Pls.' Memo. 15.) Thus, Plaintiffs' quarrel is with the fact that the information comes from Mayo's expert instead of from the Court. As to Mr. Adelson's opinions on specific legal issues as applied to this case, Plaintiffs cite in their materials only 3 pages of Adelson's 25-page report that they believe contain impermissible legal conclusions. (See id. at 13, 15.)

## LEGAL STANDARD

Expert testimony is admissible if sufficient to meet the foundational demands of Fed. R. Evid. 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Id.; see also Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993). When considering expert testimony under Rule 702, a court is required to perform a "gatekeeper" role, to ensure that "all scientific testimony is both reliable and relevant." Barrett v. Rhodia, Inc., 606 F.3d 975, 980 (8th Cir. 2010) (quoting Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 757 (8th Cir. 2006)). The Eighth Circuit has noted that "[t]he rule clearly 'is one of admissibility rather than exclusion.'" Lauzon v. Senco Products, Inc., 270 F.3d 681, 686 (8th Cir. 2001) (internal quotation marks and citations omitted). The Court "must be vigilant not to exclude an expert where the opponent's challenge to the proffered testimony goes to the weight that the jury accords the testimony rather than to its admissibility." Guadreault v. Elite Line Servs., LLC, 2014 WL 2117211, at *2 (D. Minn. May 21, 2014).

Expert testimony is relevant if it "will help the jury understand the evidence or decide a fact in issue." Hartley v. Dillards, Inc., 310 F.3d 1054, 1060 (8th Cir. 2002); (citing, *inter alia*, Fed. R. Evid. 702). An expert may opine on the ultimate issues of fact. Fed. R. of Evid. 704. However, "an expert's testimony need not relate directly to the ultimate issue that is being resolved by the trier of fact, it only need be relevant to evaluating a factual matter." Smith v. BMW North Am., Inc., 308 F.3d 913, 919 (8th Cir. 2002) (citation omitted). The testimony must, nonetheless be "sufficiently tied to the facts of the case that will aid the jury in resolving a factual dispute." Concord Boat Corp. v. Brunswick Corp., 207 F.3d 1039, 1055 (8th Cir. 2000) (quoting Daubert, 509 U.S. at 591). "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered" for the opinion to be useful to the jury. General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). However, doubts regarding usefulness should generally be resolved in favor of the admissibility. Clark v. Heidrick, 150 F.3d 912, 915 (8th Cir. 1998).

"As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not admissibility; it is up to the opposing party to examine the factual basis for the opinion-examination. Only if the experts' opinion is so fundamentally unsupported they can offer no assistance to the jury must such testimony be excluded." Bonner v. ISP Techs, Inc., 259 F.3d 924, 929-30 (8th Cir. 2001) (internal citations and quotations omitted).

13

## ARGUMENT

I. **PLAINTIFFS' OBJECTIONS AS TO MR. ADELSON'S SUPPOSED LEGAL CONCLUSIONS ARE PREMATURE, UNFOUNDED, AND DO NOT JUSTIFY PLAINTIFFS' ATTEMPT TO BAR MR. ADELSON FROM OFFERING ANY TESTIMONY.**

Plaintiffs' first claim is that Mr. Adelson's should be stricken because it provides "legal conclusions that are inadmissible." (Pls.' Memo. 11.) The Court should deny Plaintiffs' Motion for three reasons: (1) Plaintiffs' motion is premature and is not the subject of a proper Daubert motion; (2) Mr. Adelson's opinions are not inadmissible legal conclusions; and (3) even if portions of his testimony are inadmissible, the bulk of Mr. Adelson's testimony is not couched in inadmissible legal conclusions and should therefore be admitted

### A. **Plaintiffs' Motion is Premature.**

As an initial matter, Plaintiffs' motion to strike Mr. Adelson's testimony as constituting impermissible legal conclusions is premature, and their objections should be addressed in a motion *in limine* either just prior to or at trial. Citing considerable case law, Plaintiffs argue that Mr. Adelson's supposed legal conclusions justify striking the entirety of his Report and precluding him from offering any testimony in this case. (Pl.'s Memo. 11-13, 15.) However, with one exception, none of the cases Plaintiffs cite involve the court excluding expert testimony in response to a Daubert motion. See, e.g., Southern Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc., 320 F.3d 838, 841 (8th Cir. 2003); Watkins v. Schriver, 52 F.3d 769, 771 (8th Cir. 1995); United States v. Klaphake. 64 F.3d 435, 438-39 (8th Cir. 1995); United States v. Barile, 286 F.3d 749, 759-61 (4th

709554.v4

Cir. 2002).[3] To the contrary, each of these cases involved either the denial of a motion *in limine* to exclude the testimony or an objection to the testimony at trial.

Courts in this district have recognized that Daubert motions are not the proper vehicle for vetting expert opinions for impermissible legal conclusions. For example, in Rexam Inc. v. United Steel Workers of Am., 2006 U.S. Dist. LEXIS 6579 (D. Minn. Feb. 21, 2006), Judge Montgomery refused to exclude portions of expert testimony as constituting impermissible legal conclusions because "[t]his matter can be revisited as a motion *in limine* either just prior to or at trial." Id. at *53. In fact, at oral argument, attorneys from the moving party in Rexam admitted that "this motion is normally brought as a motion *in limine* . . . ." Id.

Accordingly, the Court should deny Plaintiffs' motion on the grounds that it is premature and address the issue at or shortly before trial, if needed.

### B.    Mr. Adelson's Opinions Are Admissible.

The Federal Rules of Evidence admit opinions, lay and expert, when helpful to the trier of fact. In order to render this approach fully effective and to allay any doubt on the subject, Fed. R. Evid. 704 specifically abolished the so-called "ultimate issue" rule. Fed. R. Evid. 704 and the Advisory Committee Notes to the 1972 rule change describe the previous ultimate issue rule as "unduly restrictive, difficult of application, and generally

---

[3] Plaintiffs' reference to Wagner v. Hesston Corp., 450 F.3d 756 (8th Cir. 2006) is inapposite because Wagner provides a Daubert analysis of peer review testing, which is not at issue here.

709554.v4

served only to deprive the trier of fact of useful information." Fed. R. Evid. 704; Advisory Comm. Notes to 1972 Rule (citations omitted).

In the Eighth Circuit, expert testimony is admissible if it "will assist the trier of fact to understand the evidence or to determine a fact issue in a case[.]" United States v. Just, 74 F.3d 902, 905 (8th Cir. 1996) (quoting Fed. R. Evid. 702). Such testimony is not objectionable merely for addressing an ultimate issue. Id. (citing Fed. R. Evid. 704; United States v. Cotton, 22 F.3d 182, 185 (8th Cir. 1994)); see also United States v. Two Eagle, 318 F.3d 785, 792-93 (8th Cir. 2003) (holding that expert opinion on the ultimate jury question may be permissible).

Indeed, Rule 704 provides expert testimony that is "otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact" Fed. R. Evid. 704(a). But an expert witness cannot opine as to her legal conclusion, that is, an opinion on an ultimate issue of law. See, e.g., Southern Pine Helicopters, 320 F.3d at 842. "In other words, an expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied." Burkhart v. Wash. Metro. Area Transit Auth., 112 F.3d 1207, 1212-13 (D.C. Cir. 1997).

In this case, Mr. Adelson proffers two forms of legal testimony: (1) testimony regarding the "state of law" in areas relating to the ADA and the Rehabilitation Act and (2) testimony regarding his application of that legal understanding to facts from the case. As to the first area, while Plaintiffs quibble with Mr. Adelson's use of phrases such as "well-recognized" or "well-settled," Plaintiffs do not appear to challenge Mr. Adelson's

characterization of the state of the law in these areas. (<u>See</u> Pls.' Memo. 15.) Apparently,

Plaintiffs would prefer that these undisputed statements of law come from the Court as

opposed to Mr. Adelson.[4] The fact that these accurate statements of law are contained in

Mr. Adelson's expert report is not grounds for striking the report, particularly so

prematurely, when Mayo has not yet even determined whether it intends to offer the

report itself as an exhibit at trial. To the contrary, these statements of law provide context

for his subsequent opinions, further underscore his expertise in this area, and are certainly

not a valid basis for excluding the ***entirety*** of his proposed testimony.

　　As to Mr. Adelson's application of his understanding of the law to the facts of this

case, Mayo recognizes that "[a] trial court may . . . exclude opinion testimony if it is so

couched in legal conclusions that it supplies the fact finder with no information other than

what the witness believes the verdict should be." <u>Rexam</u>, 2006 U.S. Dist. LEXIS 6579 at

*54 (quoting <u>Williams v. Wal-Mart Stores, Inc.</u>, 922 F.2d 1357, 1360 (8th Cir. 1990).

However, "the line between an inadmissible legal conclusion and admissible assistance to

the trier of fact in understanding the evidence or in determining a fact in issue is not

always bright." <u>Burkhart</u>, 112 F.3d at 1212 (citations omitted). Consequently, "[d]oubts

about whether an expert's testimony will be useful should generally be resolved in favor

of admissibility." <u>Rexam</u>, 2006 U.S. Dist. LEXIS 6579 at *54 (quoting <u>Williams</u>, 922

F.2d at 1360).

---

[4] Indeed, to the extent Mr. Adelson's testimony as to these settled areas of law is
excluded, Mayo intends to request a similar instruction of law from the Court. <u>Cf.</u>
<u>Southern Pine Helicopters</u>, 320 F.3d at 841 (noting that "the parties did not request
instructions on the relevant federal legal principles and so the district court gave none.").

The D.C. Circuit's decision in <u>Burkhart</u> is particularly insightful in this case because the case involved the ADA's "effective communication" standard. In <u>Burkhart</u>, the court held that it was a reversible error for the trial court to admit the testimony of an expert witness who offered legal conclusions and grossly misstated relevant legal principles. <u>Id.</u> at 1215. Unlike in <u>Burkhart</u>, no claim exists here that Mr. Adelson misstated any law with respect to the ADA or the Rehabilitation Act. (<u>See generally</u> Pls.' Memo. 11-13, 15.) However, Plaintiffs do claim that his use of legal terms of art cause his testimony to cross the line from admissible assistance to inadmissible legal conclusion. (<u>Id.</u> at 12-13.)

Like the expert in <u>Burkhart</u>, Mr. Adelson does at times use terms that have "specialized legal meanings" in making his conclusions. For example, Mr. Adelson uses the terms such as "effective communication" and "reasonable accommodation." (<u>See,</u> <u>e.g.</u>, Report 6, 10.) Unlike the expert in <u>Burkhart</u>, however, these terms are not "beyond the area of [Mr. Adelson's] expertise" because he has substantial knowledge regarding the "effective communication" standards under the ADA and Rehabilitation Act and because has worked both for the agency tasked with enforcing the standards and in private practice advising clients on how to comply with them. (<u>See</u> Report 2-3 (describing Mr. Adelson's work experience), 5 (describing regulatory and administrative materials reviewed by Mr. Adelson).)

Nevertheless, to the extent the Court finds it necessary to address the substance of Plaintiffs' motion and finds that these opinions to be too close to impermissible legal conclusions, the Court can limit Mr. Adelson's use of the legal vernacular or preclude his

18

testimony as to the particular issue. The Court need not, as Plaintiffs advocate, throw out the entirety of Mr. Adelson's testimony and/or report.

Indeed, the court in <u>Burkhart</u> recognized that in cases involving the "effective communication" standard, permissible expert testimony may still be offered. As the court explained:

> It may well be permissible for an appropriate[] expert to testify as to ***the difficulty an individual like Burkhart would have communicating with Officer Gray under the circumstances***. It may also be permissible for an appropriate expert to testify ***concerning the relative merits of alternative forms of communication***.

<u>Id.</u> at 1213 (footnote omitted) (emphasis added). Accordingly, to the extent the court addresses the substance of Plaintiffs' motion, the Court should not exclude any of the testimony does not constitute inadmissible legal conclusion.

### C.   The Bulk of Mr. Adelson's Testimony Does Not Constitute Legal Opinions.

Even assuming that portions of Mr. Adelson's proposed testimony constitute inadmissible legal conclusions, the bulk of Mr. Adelson's testimony is not similarly couched and should therefore not be stricken or excluded. Indeed, Plaintiffs highlight a mere eight sentences from the 25-page report, but yet ask this Court to exclude the entire 25 pages of Mr. Adelson's expert report.

Specifically, Plaintiffs set forth a list of eight conclusions that Plaintiffs presumably[5] use to justify excluding the entirety of Mr. Adelson's testimony:

---

[5] It is not entirely clear that Plaintiffs objection to these conclusions because the only objectionable portions cited in Plaintiffs' brief are on pages 13, 20, and 25 of the Report. (<u>See</u> Pls.' Memo. 11-16.)

1.    Mayo Clinic had significant language services and ADA accommodation policies, procedures, and training in place in 2010 and 2011. Ex. I, Expert Op. Adelson 6 para. 5.

2.    Mayo Clinic understood and consistently responded to the need to provide ADA Title III effective communications to Priscilla Saunders and Jason Branden. Ex. I, Expert Op. Adelson 6 para. 5.

3.    Mayo Clinic consulted with and attempted to consult further with plaintiffs about communication methods that would be effective for them. Expert Op. Adelson 6 para. 5.

4.    Mayo Clinic provided sign language interpreters and/or other appropriate auxiliary aids and services for Ms. Saunders' medical appointments and related communications. Ex. I, Expert Op. Adelson 6 para. 5.

5.    Mayo provided plaintiffs with effective communications and full access to Mayo Clinic medical services. Ex. I, Expert Op. Adelson 6 para. 5.

6.    Mayo Clinic would have further evaluated and responded to plaintiffs particularized communication concerns and preferences if plaintiffs had discussed with and fully explained these to Mayo. Ex. I, Expert Op. Adelson 17 para. 4.

7.    That Mayo acted in good faith, provided reasonable accommodations to plaintiffs, complied with DOJ's recommendation encouraging ADA Title III entities to consult with deaf/hard of hearing patients about their communication preferences and requests, and provided plaintiffs with appropriate auxiliary aids corresponding to the circumstances in this case. Ex. I, Expert Op. Adelson 21 para. 4.

8.    Mayo Clinic did not retaliate against nor discriminate intentionally against plaintiffs on the basis of disability. Ex. I, Expert Op. Adelson 21 para. 4.

(Pls.' Memo. 10-11 (citations omitted).) However, only Nos. 5-8 could be arguably construed as legal opinions. (See id.) Indeed, in arguing that Mr. Adelson's entire report

should be stricken, the only objectionable testimony cited by Plaintiffs is located on pages 13, 20, and 25. (See Pls.' Memo. 11-16.)

Moreover, as outlined in detail above, rather than offering legal opinions, Mr. Adelson presents admissible expert testimony relating to industry practice or standards. See Southern Pine Helicopters, 320 F.3d at 841 (holding that expert testimony on "industry practice or standards may often be relevant . . . and expert or fact testimony on what these are is often admissible."); see also Wood v. Minnesota Min. & Mfg. Co., 112 F.3d 306, 309-10 (8th Cir. 1997); Dickie v. Shockman, No. 98-cv-137, 2000 WL 33339623, *4 (D.N.D. July 17, 2000) (holding that corporate norms and industry standards are appropriate subjects of expert testimony). For example, Mr. Adelson draws on his experiences at the DOJ and as a consultant for various organizations, including health care providers, in order to opine on Mayo's practices as compared to other healthcare providers. (See Report 7-8, 18.) In addition, Mr. Adelson offered his opinions regarding typical types of interactions between interpreters and individuals with hearing impairments. (See id. at 9-10.). Finally, Mr. Adelson explained how individuals with different types of ASL skills interact with interpreters of various skills and described how healthcare providers can work with these individuals in order to improve communication. (Id. 9, 14, 17-18, 20.)

Accordingly, even if the Court determines that some of Mr. Adelson's opinions constitute inadmissible legal conclusions, the Court should carefully eliminate only those legal conclusions and leave the bulk of Mr. Adelson's relevant and reliable testimony.

## II.      MR. ADELSON'S TESTIMONY IS RELIABLE AND RELEVANT.

Plaintiffs' contentions that Mr. Adelson's testimony is not reliable and would not be relevant are incorrect. The claimed unreliability turns primarily on the lack of any survey or studies conducted by Mr. Adelson regarding the relevant communications between Plaintiffs and Mayo. (Pls.' Memo. 15.) However, this is not the appropriate standard. The plain language of Fed. R. Evid. 702 allows for experts with scientific as well as technical or ***other specialized knowledge*** that will help the trier of fact to testify as experts. Plaintiffs' argument ignores the remainder of the rule. Nothing in Fed. R. Evid. 702 or valid precedent requires Mr. Adelson to have scientific knowledge to testify as an expert. Reliability of an expert may be established in a variety of ways and "may focus upon personal knowledge or experience." Kumho Tire Co., Ltd., v. Carmichael, 526 U.S. 137, 150 (1990). As the Advisory Committee explains in its note remarking on expert testimony under Fed. R. Evid. 702: "An expert may be qualified on the basis of experience. In certain fields, ***experience is the predominant, if not sole, basis for a great deal of reliable expert testimony***." Advisory Committee, Notes to the 2000 Amendments, Fed. R. Evid. 702 (emphasis added).

Mr. Adelson has such experience here, which forms a basis for reliable expert testimony. His experience includes the following: (1) serving as a Senior Trial Attorney and Attorney Advisor for the DOJ, which is the administrative agency tasked with enforcing Title III of the ADA; (2) successful completion of training offered only to DOJ employees in areas relating to the use of interpreters for individuals with hearing impairments; and (3) working as a consultant for health care providers (both public and

22

private) with respect to "general practices, records, policies, and procedures concerning the ADA's effective communication requirements." (Report 3.)

Mr. Adelson's testimony at trial will be based on specialized knowledge that will assist the trier of fact to understand the evidence, which meets Fed. R. Evid. 702. Contrary to Plaintiffs claim, there is no requirement in the Federal Rules of Evidence or case law that requires an expert to cite to articles or scientific journals within their report. Plaintiffs are mistaken in their argument that an expert is required to cite to published methods applied or provide a formal scientific analysis. Nothing within precedent or the Federal Rules of Evidence set this forth.

In addition, Plaintiffs ignore the fact that Mr. Adelson has been retained as an expert witness in more than five federal and state cases involving compliance with federal standards governing accessibility and communication, including the following:

- Nick, et al., v. City of Bethel, et al., Case No., 3:07-cv-00098-TMB, (D. Alaska). Mr. Adelson was retained as an expert "in Title VI of the Civil Rights Act of 1964, federal language assistance, and federal accessibility requirements as they pertain to health care."

- Flores-Rios v. Memorial Hospital, Case No. 2009-cv-3549, (El Paso County District Court, Colorado). Mr. Adelson was retained "as an expert in Title VI of the Civil Rights Act of 1964, federal language assistance, and federal accessibility requirements as they pertain to health care."

- Braunstein v. The State of Arizona, Case No. CV06-02726-PHX-JWS, (D. Arizona). Mr. Adelson was retained "as an expert in the federal Disadvantaged Business Enterprise (DBE) program and Title VI of the Civil Rights Act of 1964."

- Hall v. State of Louisiana et al., Case No. 3:12-cv-657 (M.D. La.). Mr. Adelson was retained "as an expert in redistricting" as it pertains to The Voting Rights Act of 1965 and the U.S. Constitution.

- <u>Harris et al., v. Wayne County Airport Authority</u>, Case No. 2: 14-cv-13630-DML, (E.D. Mich.). Mr. Adelson was retained "as an ADA expert."

(Report at 4.)

In fact, most recently, Chief Judge Jackson of U.S. District Court for the Middle District of Louisiana qualified Mr. Adelson as an expert at trial on November 18, 2014, in the case of <u>Hall et al. v. State of Louisiana et al.</u>, Case No. 3:12-cv-657, Minute Entry, ECF No. 538 (M.D. La. Nov. 18, 2014). Chief Judge Jackson qualified Mr. Adelson as an expert in several areas, including federal civil rights laws and investigation of discrimination complaints. <u>See id.</u> Judge Jackson denied plaintiffs' motions to strike Mr. Adelson's report and testimony. <u>Id.</u>, Order, ECF No. 461 at 2 (July 28, 2014) ("For reasons given by the Court, . . . [t]he Motion in Limine to Limit Expert Report and Testimony of Bruce Adelson (Doc. 334) . . . [is] denied.).

Basically, Plaintiffs are challenging the probative value of Mr. Adelson's testimony. However, that is a matter of credibility to be determined by the trier of fact. As the Eighth Circuit states: "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination. Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." <u>Bonner</u>, 259 F.3d 924 at 929-30 (quotation omitted)); <u>see also</u> <u>Hartley</u>, 310 F.3d at 1061; <u>Wood</u>, 112 F.3d at 309-10.

In short, the objections to Mr. Adelson's testimony on the grounds of reliability and relevance go more to the weight of his testimony, rather than its admissibility. He

can, of course, be cross-examined on various issues raised by Plaintiffs. However, that does not bar him from offering his testimony and allowing the trier of fact to determine its probative worth. United States v. Dico, Inc., 266 F.3d 864, 871 (8th Cir. 2001); Hose v. Chicago N.W. Transp. Co., 70 F.3d 968, 974 (8th Cir. 1995); Loudermill v. Dow Chemical Co., 863 F.2d 566, 570 (8th Cir. 1988).

## III.    MR. ADELSON'S TESTIMONY IS NOT UNFAIRLY PREJUDICIAL.

In a last-ditched effort to exclude Mr. Adelson's testimony, Plaintiffs argue that "Adelson's experience as a DOJ attorney opining on the [ADA] will certainly be unfairly prejudicial to the Plaintiffs." (Pls. Memo 16.) Federal Rule of Evidence 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

It is not entirely clear why Plaintiffs claim that Mr. Adelson's testimony would be "unfairly prejudicial," but the fact that this claim is tied to his work at the DOJ suggests that Plaintiffs are claiming that individuals who formerly worked for an agency tasked with enforcing a statute is either biased or incapable of providing non-prejudicial testimony regarding the statute.

It is worth noting that Plaintiffs cite no authority for this proposition – and presumably no such authority exists. Plaintiffs should be reminded that "[j]udges are not like pigs, hunting for truffles buried in briefs . . . . A litigant who fails to press a point by supporting it with pertinent authority or by showing why it is a good point despite a lack of authority . . . forfeits the point." Carpenter v. Vaughn, 888 F. Supp. 635, 648 (M.D. Pa.

1994) (quotation and citations omitted). Logically speaking, it is hard to understand how someone who helped worked for the agency tasked with enforcing the relevant statute would be biased against either party. Indeed, an individual who helped the agency bring suit against non-compliant entities would more likely be biased against the covered entity than against the individual purporting to seek the benefits the agency is tasked with enforcing.

In fact, in <u>Hall et al. v. State of Louisiana et al.</u>, Case No. 3:12-cv-657 (M.D. La.), Chief Judge Jackson qualified Mr. Adelson as an expert notwithstanding the objection of the plaintiffs' attorneys who also happened to be Mr. Adelson's former DOJ colleagues. Because there is no basis in law for excluding Mr. Adelson's testimony simply because he formerly worked for the DOJ, the Court should deny Plaintiffs' motion.

## <u>CONCLUSION</u>

For the above reasons, the Plaintiffs' Motion to exclude the testimony and report of Mr. Adelson should be denied in its entirety.

Dated: December 17, 2014.

FELHABER LARSON

By: <u>s/ Penelope J. Phillips</u>
     Penelope J. Phillips, #200876
     Grant T. Collins, #0390654
     Randi J. Winter, #0391354
220 South Sixth Street, Suite 2200
Minneapolis, Minnesota 55402
Telephone: (612) 339-6321
pphillips@felhaber.com
rwinter@felhaber.com

709554.v4

Joanne L. Martin, #0388453
Mayo Clinic
200 First Street S.W.
Rochester, MN 55905
Telephone: 507-284-4266
martin.joanne@mayo.edu

ATTORNEYS FOR DEFENDANT MAYO
CLINIC

709554.v4