**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Priscilla Saunders and Jason Branden,

    Court File No. 13-CV-1972 (JNE/HB)

  Plaintiffs,

vs.

    **REPLY MEMORANDUM OF LAW IN**
    **SUPPORT OF MAYO CLINIC'S**
Mayo Clinic,    **MOTION FOR SUMMARY**
    **JUDGMENT**

  Defendant.

---

Plaintiffs attempt to manufacture a factual dispute by inundating the Court with paper, including untimely affidavits from seven previously undisclosed witnesses, an affidavit from Saunders contradicting her previous testimony and discovery responses, and deposition transcripts already on file.[1] Yet, despite their volume, Plaintiffs' submissions fail to do the very task they must to survive summary judgment: identify probative, admissible evidence in the record establishing genuine issues of material fact exist from which a reasonable jury could conclude: (1) Plaintiffs have standing to seek injunctive relief based on continuing, present adverse effects of discrimination, and (2) Mayo acted deliberately indifferent to the strong likelihood that pursuit of its questioned policies would result in a violation of Plaintiffs' federal rights. Thus, even if the Court elects not to set aside Plaintiff's improper submissions, Plaintiffs' claims must still be summarily dismissed.

---

[1] Contemporaneous with this reply, Mayo is filing a motion to strike the affidavits of the undisclosed witnesses and the contradictory paragraphs in Saunders' Affidavit. Mayo respectfully submits, however, that even when such improper submissions are considered, Plaintiffs still fail to show a material fact dispute precluding summary judgment for the reasons articulated herein.

## I. PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF FAILS BECAUSE THERE IS NOTHING FOR THE COURT TO ENJOIN.

"The mere fact that [alleged] injurious activity took place in the past does nothing to convey standing to seek injunctive relief against future [legal] violations." Harmon v. City of Kansas City, 197 F.3d 321, 327 (8th Cir. 1999). Instead, Plaintiffs "must demonstrate a real[] and immediate threat that [they] would again suffer similar injury in the future." Tracie Park v. Forest Serv. of the U.S., 205 F.3d 1034, 1037 (8th Cir. 2000) (internal quotations, modifications omitted).

In their opposition brief, Plaintiffs do not bother to address Mayo's argument that their ADA/RA claims for injunctive relief fail because none of the alleged circumstances of discrimination exist today (or, for that matter, at the time they filed suit in July 2013). (Compare Mov-Br. 33-35 with Opp-Br. at 41-43.) But to survive dismissal, Plaintiffs must "show a present case or controversy." City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983). Neither Plaintiffs' recitations of their own past grievances, nor their reliance on alleged complaints Mayo received from three patients in 2012 (well after the time period at issue in this suit), is sufficient to make this showing, because these alleged past injuries are not accompanied "by any continuing, present adverse effects." Id.

Instead, the following undisputed facts compel summary judgment on this issue:

| **Undisputed Fact** | **Record Cites** |
|---|---|
| ➢ The interpreters Plaintiffs complained about (Rasmusson, Bruns) and the purported discriminatory actor (Hughes) stopped working at Mayo before Plaintiffs filed suit.[2] | Rasmussen 42:5-6; Bruns 24:20-21; Hughes 8:13-14 |

---

[2] Although Voller is still a Mayo employee, he does not work in Language Services or at the Rochester campus. (Voller 4:4-10.)

715891.v2

| **Undisputed Fact** | **Record Cites** |
|---|---|
| ➢ Mayo implemented a policy in December 2010 requiring staff interpreters to possess NAD Level IV certification or its equivalent, which is the minimum certification level advocated by Plaintiffs. (See Opp-Br. at 5.) | Hughes 149:24-25; Pltf. Attachment 14 |
| ➢ Mayo has continuously maintained a Communication Policy establishing that deaf patients are provided interpreters at no cost. | Rasmusson Ex. 6 |
| ➢ In 2011-2012, Mayo increased its pool of freelance interpreters and utilizes video-relay as an additional auxiliary aid. | Wellumson Aff. ¶7; Hughes 99:11-16 |
| ➢ Plaintiffs have no personal knowledge regarding Mayo's current ASL interpreters, policies or practices; Saunders testified she hasn't "bothered" to find out. | Saunders 85:13-21, 103:22-25; Branden 99:3-5 |
| ➢ According to the MDHS Southern Regional Manager (Bell), after MDHS met with Mayo representatives (Hughes and Voller) to discuss concerns identified regarding staff interpreters, Mayo was "very willing to work with [MDHS]," and thereafter, the concerns MDHS received about Mayo staff interpreters "really slowed down, faded out over that time." | Bell 128:6-14, 198:3-24; 199:20-24 |

In light of these facts, what, exactly, would Plaintiffs have the Court enjoin Mayo from doing in the future? Although they nebulously ask the Court to "mandate[] that Mayo provide qualified interpreters who can deliver effective communication," (Opp-Br. at 43), nothing about **present day** circumstances suggest this would not occur absent court intervention.

Because Plaintiffs fail to direct the Court to any evidence showing "continuing, present adverse effects," Lyons, 461 U.S. at 103, they have nothing for the Court to redress, Tracie Park, 205 F.3d at 1037-38, and they lack standing to seek injunctive relief. Therefore, their ADA claim must be dismissed in its entirety, and their RA claim must be

715891.v2

dismissed as to this form of relief.

## II. PLAINTIFFS HAVE NOT MET THE EXACTING STANDARD OF SHOWING DELIBERATE INDIFFERENCE.

In what may be the only concession they make, Plaintiffs at least acknowledge what the law so clearly requires; specifically, to pursue a claim for compensatory damages—the only other form of relief available under the RA—they must satisfy a heightened evidentiary burden of showing Mayo acted with deliberate indifference. (Opp-Br. at 35.) This is not easily done, as "[d]eliberate indifference is akin to criminal recklessness." Drake v. Koss, 445 F.3d 1038, 1042 (8th Cir. 2006). At least in their Opposition Brief, Plaintiffs also concede their burden requires them to prove more than negligence,[3] (Id.)—and more even than gross negligence—but that Mayo "willfully with[held] necessary auxiliary aids." (Id.)

While it does not appear the Eighth Circuit has yet addressed this "exacting standard" in the context of an ADA/RA case against a healthcare provider, the Eleventh Circuit recently did in McCollum v. Orlando Reg'l Healthcare Sys., 768 F.3d 1135, 1147 (11th Cir. 2014): "To establish deliberate indifference, a plaintiff must show that defendant '**knew** that harm to a federally protected right was substantially likely' and

---

[3] Instructively, even Plaintiffs characterize Mayo's actions as amounting to "negligence" in opposition to Mayo's motion to exclude a portion of their expert report. (See Pltf. Memo. re: Shepard-Kegl at 7, n. 5 [ECF No. 70].)

715891.v2

'**failed** to act on that likelihood.'" Id. (emphasis in original).[4]

Here, an examination of the **actual** record evidence of what Mayo **knew** and how

it **acted** in response, demonstrates Plaintiffs have failed to meet this higher burden:

| Event | Mayo's Action |
|---|---|
| In 2004 or 2005, Saunders asks Mayo to place Dorsett "on the top of [Saunders'] list" of "preferred interpreters." (Saunders 15:4-17, 17:7-14, 23:13-24:2, 26:2-18.) | Mayo honored Saunders' request, and according to Saunders,<br><br>"I had [Dorsett] all the way until she left [Mayo's employment]. **The other two I didn't have. I always had Kathy [Dorsett].**" (Saunders 94:14-18.)<br><br>Saunders "saw [Dorsett] so frequently" as her interpreter that Saunders came to consider Dorsett a friend. (Saunders 15:15-17.) |
| Following Dorsett's termination, Saunders contacts Hughes after Rasmusson interprets for her 07/02/10 appointment complaining Rasmusson was "slow, [Saunders] couldn't understand her and it wasn't high enough ASL." (Hughes 88:15-23; Saunders Aff. ¶ 25.) | Hughes instructs the interpreter services coordinators to provide an "appropriate interpreter" for Saunders other than Rasmusson. (Hughes 89:3-7.)<br><br>Mayo sends freelancers to Saunders' next 18 appointments from July to early December 2010, (Saunders Ex. 2), and Saunders' states she "didn't have a complaint during that period." (Saunders 44:23-45:1.) |

---

[4] Of note, **every** case cited by Plaintiffs in support of their argument a genuine issue of fact exists on the issue of effective communication involves a fact pattern where a provider failed to provide an interpreter altogether, (see Opp-Br. at 22-23); none involved the fact pattern here, where the provider repeatedly engaged the patient and companion in an attempt to identify, address, and resolves their concerns.

715891.v2

| Event | Mayo's Action |
|---|---|
| Saunders contacts Hughes after Rasmusson is sent to interpret for her 12/10/10 appointment. (Saunders 32:24-33:15.) | Hughes explained freelancers were unavailable, "encouraged [Plaintiffs] to give [Rasmusson] a chance," and offered to meet with Plaintiffs to work out their concerns. (Saunders 33:10-15, 35:3-5, Ex. 7 at Saunders0000011.) |
| Saunders e-mails Voller on 12/16/10 complaining, *inter alia*, it is her "right[] to have [a] proper interpreter who's able to understand [her] clearly without stopping [her] to repeat or for [her] to slow [down to] make sure they understand what [she's] saying." (Saunders Ex. 4.) | Voller responds less than two hours later, acknowledging Saunders' frustrations and offering to meet with Plaintiffs to resolve their concerns. (Id.)<br><br>Additionally, Mayo locates a freelancer for Saunders' next appointment on 12/17/10. (Saunders Ex. 2 at DEF00310.)<br><br>Hughes and Voller again attempt to meet with Plaintiffs prior to Saunders' 01/04/11 appointment. (Branden 75:4-76:14.) |

To the extent Plaintiffs attempt to rely on events unrelated to their own interactions with Language Services, these events, too, demonstrate the **lack** of discriminatory intent.[5] To wit, Mayo implemented a policy change increasing the minimum certification requirements for ASL interpreters in December 2010. (Opp-Br. Attachment 14 [Under Seal].) And, after meeting with Mayo to discuss changes to its interpreter policies in January 2011, MDHS representatives found Mayo to be receptive

---

[5] Plaintiffs' attempt to rely on the Dooses' **2012** complaints, [see ECF Nos. 61, 62], is unavailing because they are not probative to the issue of whether Mayo acted with deliberate indifference **over one year earlier** in December 2010-January 2011. Equally misplaced is Plaintiffs' attempted reliance on another patient's (Curt Slater) request to Hughes in May 2010 to replace Rasmusson, [ECF No. 63 ¶¶ 4-10]. Slater's description of what transpired confirms Mayo did not intentionally discriminate, but rather, Hughes honored his request. (Id. ¶¶9-10.) Slater's wife, who happens to also be MDHS manager Teresa Bell, likewise confirmed Hughes "was very receptive to [the Slaters'] concerns," and Hughes "arranged for [her] husband to have a different interpreter after [they] complain[ed]." (Bell 7:23-8:1, 103:25-104:19.)

6

6

715891.v2

and "very willing to work with [MDHS], willing to accept [MDHS's] feedback." (Bell 128:6-14, 198:3-24.)

ADA/RA regulations require a provider to afford disabled individuals an equal opportunity to gain the same benefits as non-disabled individuals. 45 C.F.R. § 84.4(b)(2). The record is devoid of evidence that the concerns Plaintiffs allegedly identified with Rasmusson's interpreting deprived them of any benefits provided to non-disabled patients.

Conversely, "[t]he regulations do not require healthcare providers to supply any and all auxiliary aids even if they are desired and demanded." McCullum, 768 F.3d at 1147. Nor do the regulations require a provider to give primary consideration to a patient's preference. 28 C.F.R. pt. 36, App. C. While the record reflects Mayo knew Plaintiffs were unsatisfied with Rasmusson's interpreting services, it does not rise to the level of establishing that Mayo had knowledge that "harm to [Plaintiffs'] federally protected right was substantially likely." McCollum, 768 F.3d at 1147. In that same vein, the record does not show Mayo's representatives "failed to act," Id., but rather, precisely the opposite. Unfortunately, the record is clear that Plaintiffs were "not interested in communicating with them," (Saunders 54:23-55:13), which Plaintiffs' viewed as a "waste [of] time," (Saunders 36:3), and as a result, here we are today.

Plaintiffs fail to meet their burden of establishing deliberate indifference equating to criminal recklessness, and for that reason, their claim for compensatory damages under the RA fails and must be dismissed.

715891.v2

Dated: January 12, 2015.     FELHABER LARSON

By: <u>s/ Penelope J. Phillips</u>
  Penelope J. Phillips, #200876
  Randi J. Winter, #0391354
  220 South Sixth Street, Suite 2200
  Minneapolis, Minnesota 55402
  Telephone: (612) 339-6321
  pphillips@felhaber.com
  rwinter@felhaber.com

  Joanne L. Martin, #0388453
  Mayo Clinic
  200 First Street S.W.
  Rochester, MN 55905
  Telephone: 507-284-4266
  martin.joanne@mayo.edu

715891.v2