UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Priscilla Saunders and Jason Branden,

      Plaintiffs,

v.                                                   Civil No. 13-1972 (JNE/HB)
                                                   ORDER

Mayo Clinic,

      Defendant.

Heather M. Gilbert, Gilbert Law PLLC, and Robert W. Roe, Rob Roe Law, LLC, appeared for Priscilla Saunders and Jason Branden.

Penelope J. Phillips and Randi J. Winter, Felhaber Larson, and Joanne L. Martin, Mayo Clinic, appeared for Mayo Clinic.

      Priscilla Saunders sought care at Mayo Clinic in 2010 and 2011. She and her partner, Jason Branden, are deaf. Saunders and Branden brought this action against Mayo Clinic, claiming that Mayo Clinic had failed to provide appropriate auxiliary aids and services in violation of Title III of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. The case is before the Court on Mayo Clinic's Motion for Summary Judgment, as well as the parties' motions to exclude certain evidence. For the reasons set forth below, the Court grants in part and denies in part Mayo Clinic's Motion for Summary Judgment. The Court excludes certain evidence.

**Plaintiffs' Motion to Strike Defendant's Expert Witness, Bruce L. Adelson, Esq.**

      Plaintiffs moved to exclude the report and testimony of Bruce Adelson, who described himself as the CEO of a law and consulting firm that has expertise regarding

1

compliance with various federal laws. According to Adelson, he was retained by Mayo Clinic's attorneys "to render an opinion about the case at bar, the effectiveness of communications standards under ADA Title III, Mayo Clinic's and other health care providers' language services practices during the time period at issue, 2010 through the filing of [P]laintiffs' complaint in July 2013, and Mayo Clinic's efforts to accommodate Priscilla Saunders."

Plaintiffs argued that Adelson's report and testimony should be excluded because his "report contains legal opinions and opinions based on non-scientific, unreliable methods" and "his testimony would be unfairly prejudicial to Plaintiffs." Mayo Clinic responded that Plaintiffs had misrepresented the substance of Adelson's testimony, that their "attempt to exclude alleged legal opinions is premature," that their claim that Adelson's testimony is irrelevant and unreliable "is based on a fundamental misunderstanding of the law regarding expert witness testimony," and that their assertion that Adelson's testimony is unfairly prejudicial is "nonsensical."

Although Mayo Clinic disclaimed any intention of asking Adelson, if called to testify at trial, "to quote from federal regulations, legal treatises, or case law during a direct examination," Mayo Clinic derided Plaintiffs' challenge to Adelson's testimony regarding the state of the law:

> In this case, Mr. Adelson proffers two forms of legal testimony: (1) testimony regarding the "state of law" in areas relating to the ADA and the Rehabilitation Act and (2) testimony regarding his application of that legal understanding to facts from the case. As to the first area, while Plaintiffs quibble with Mr. Adelson's use of phrases such as "well-recognized" or "well-settled," Plaintiffs do not appear to challenge Mr. Adelson's characterization of the state of the law in these areas. Apparently, Plaintiffs

> would prefer that these undisputed statements of law come from the Court as opposed to Mr. Adelson.

A footnote that follows the quoted text serves only to confirm the impropriety of at least some of Adelson's anticipated testimony: "Indeed, to the extent Mr. Adelson's testimony as to these settled areas of law is excluded, Mayo intends to request a similar instruction of law from the Court."

"[E]xpert testimony on legal matters is not admissible. Matters of law are for the trial judge, and it is the judge's job to instruct the jury on them." *S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003) (citation omitted). To the extent Adelson opined on the state of law, his opinions are plainly inadmissible. The Court will consider whether Adelson's opinions should otherwise be excluded in connection with any motions in limine filed before trial. Plaintiffs' motion to strike Adelson is granted in part and denied in part.

### Mayo Clinic's Motion to Exclude <u>Portions</u> of Expert Testimony

Mayo Clinic moved to exclude portions of the anticipated testimony of Judy A. Shepard-Kegl, Ph.D. Mayo Clinic did not object to her explanation of the various classifications and qualification standards of American Sign Language (ASL) interpreters, the explanation of her methodology for assessing the linguistic skills of individuals with hearing impairments, or her individual assessments of Saunders's and Branden's proficiency in ASL, English, and lip reading. Mayo Clinic did object to the factual recitation that appears in the background portion of Dr. Shepard-Kegl's report, as well as the portion of her report that recites her opinions on the questions posed to her.

3

Mayo Clinic maintained that the anticipated testimony should be excluded because Dr. Shepard-Kegl based her opinions on a version of facts that assumes Plaintiffs' pre-discovery allegations are true, she opined on the availability of interpreters and the standard practice in Minnesota regarding interpreters hired to work in hospital settings without sufficient foundation or knowledge, she opined on the "ideal" or "best" mode of communication instead of whether the communications at issue were effective, and she opined on what Mayo Clinic could and should have done to accommodate Plaintiffs.

Mayo Clinic asserted that it was not attacking the weight to be afforded Dr. Shepard-Kegl's opinion but rather the admissibility of the challenged testimony. Nevertheless, Mayo Clinic's arguments are directed more to weight than admissibility. None persuade the Court that the wholesale exclusion of the challenged portions is appropriate. Mayo Clinic's motion to exclude portions of Dr. Shepard-Kegl's testimony is denied without prejudice to Mayo Clinic's ability to file a motion in limine before trial that seeks to restrict her testimony.

### Mayo Clinic's Motion to Strike Affidavits

On the same day that it filed its reply memorandum in support of its motion for summary judgment, Mayo Clinic moved to strike affidavits that Plaintiffs had filed in support of their response to Mayo Clinic's motion for summary judgment. The Court denies Mayo Clinic's motion to strike. *See Zellner-Dion v. Wilmington Fin., Inc.*, Civil No. 10-2587, 2012 WL 2952251, at *1 n.1 (D. Minn. July 19, 2012); *Carlson Mktg. Grp., Inc. v. Royal Indem. Co.*, Civil No. 04-3368, 2006 WL 2917173, at *2-3 (D. Minn. Oct. 11, 2006). Nevertheless, Plaintiffs submitted affidavits from individuals who were not

properly disclosed.  *See* Fed. R. Civ. P. 26(a), (e).  Plaintiffs have not shown the failure to properly disclose them was substantially justified or harmless.  *See* Fed. R. Civ. P. 37(c)(1).  The Court declines to consider their affidavits.  *See Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861-64 (9th Cir. 2014); *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 329-30 (4th Cir. 2011); *Malone v. Ameren UE*, 646 F.3d 512, 515-16 (8th Cir. 2011); *Troknya v. Cleveland Chiropractic Clinic*, 280 F.3d 1200, 1205 (8th Cir. 2002).

### Mayo Clinic's Motion for Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A)-(B).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).  In determining whether summary judgment is appropriate, a court must view genuinely disputed facts in the light most favorable to the nonmovant, *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009), and draw all justifiable inferences from the evidence in the nonmovant's favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any

5

person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a) (2012).  Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a) (2012). Because "the ADA and the Rehabilitation Act are 'similar in substance,' [the Eighth Circuit treats] the case law interpreting them as interchangeable.'" *Argenyi v. Creighton Univ.*, 703 F.3d 441, 448 (8th Cir. 2013).

Regulations promulgated under Title III of the ADA require a public accommodation to "furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c) (2010).  The term "auxiliary aids and services" includes "[q]ualified interpreters." *Id.* § 36.303(b)(1).  "Qualified interpreter means an interpreter who is able to interpret effectively, accurately and impartially both receptively and expressively, using any necessary specialized vocabulary." *Id.* § 36.104.  Regulations promulgated to effectuate the Rehabilitation Act require "entities receiving federal funding to furnish auxiliary aids which 'afford handicapped persons equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement' as others." *Argenyi*, 703 F.3d at 448 (quoting 45 C.F.R. § 84.4(b)(2) (2014)).

*Discrimination on the basis of disability*

Mayo Clinic first argued that summary judgment is appropriate because Plaintiffs cannot demonstrate that it discriminated against them on this basis of their disabilities. *See id.* According to Mayo Clinic, "Plaintiffs cannot survive summary judgment based on their theory that [it] denied them the benefits of its services by providing an allegedly unqualified interpreter for three reasons":  (1) Plaintiffs failed to show a genuine issue of material fact about the qualifications of Linda Rasmusson, the interpreter whom they deemed unqualified; (2) Plaintiffs were able to effectively communicate with Saunders's providers through the use of other auxiliary aids; and (3) Plaintiffs were not denied the benefit of Mayo Clinic's services as a result of ineffective communication by Rasmusson.

As to Rasmusson's qualifications, the Court notes that Mayo Clinic misrepresented the evaluations Rasmusson had received when it hired her. In January 2007, Mayo Clinic's staff interpreters evaluated Rasmusson's interpreting skills. According to Mayo Clinic, their "evaluation forms reflect that they scored Rasmusson in the 90th percentile in most areas." That is not true. Each staff interpreter completed two forms to evaluate Rasmusson. One form evaluated voice-to-sign skills, the other sign-to-voice skills. The voice-to-sign form called for 27 ratings on a scale from 0 to 5 in 4 categories: (1) general overall items; (2) signs; (3) fingerspelling and numbers; (4) and interpreting factors.[1] The sign-to-voice form called for 15 ratings on the same scale in 5 categories: (1) general overall items; (2) conveying the message; (3) matching character;

---

[1]   A rating of "0" corresponded to less than 50%; "1" to 60%; "2" to 70%; "3" to 80%; "4" to 90%; and "5" to 100%.

(4) vocal techniques; and (5) grammatical structure.  On one of the voice-to-sign forms, 14 of the 27 ratings were "3," and there was only one category—general overall items—in which a majority of the ratings were "4" or "5."  On the other voice-to-sign form, 13 of the 27 ratings were either "2" or "3," and there was only one category—general overall items—in which a majority of the ratings were either "4" or "5."  On each sign-to-voice form, 11 of the 15 ratings were either "2" or "3," and there were only two categories—general overall items and grammatical structure—in which a majority of the ratings were either "4" or "5."[2]

Saunders repeatedly complained to Mayo Clinic that she was unable to understand and to be understood by Rasmusson.  Saunders's complaints about Rasmusson correspond to the areas of relative weakness on the evaluation forms that were completed when Mayo Clinic hired Rasmusson.  Saunders was not alone in raising concerns about the interpreting services provided by Mayo Clinic to individuals with hearing loss.  In a letter that was sent to Mayo Clinic in early January 2011, the Minnesota Department of Human Services stated:

> Over the past several years individuals with hearing loss have brought concerns to the attention of Deaf and Hard of Hearing Services regional sites in Mankato and Rochester.  The primary concern has been regarding the need for more skilled interpreters while receiving medical care from Mayo facilities.  Therefore, I am writing to you to respectfully request a face-to-face meeting with you to share the concerns expressed to our agency about the provision of interpreting and related services for Deaf,

---

[2] Mayo Clinic's misstatements are not limited to Rasmusson's evaluations.  For instance, Mayo Clinic asserted that "Saunders thought working with Mayo would be a 'waste of [her] time.'"  The deposition testimony that Mayo Clinic cited to support its assertion indicated that Saunders thought working with Mayo Clinic's *staff interpreters* and trying to communicate with them was a waste of time.

8

>Deafblind and hard of hearing people who access the Mayo Hospitals and Clinics.

Viewing the record in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs submitted evidence that raises a genuine issue of material fact as to whether Rasmusson was a qualified interpreter. *See Chisolm v. McManimon*, 275 F.3d 315, 327 (3d Cir. 2001) ("Generally, the effectiveness of auxiliary aids and/or services is a question of fact precluding summary judgment.").

Next, Mayo Clinic argued that summary judgment in its favor is warranted because Plaintiffs were able to effectively communicate with Saunders's providers through the use of alternative auxiliary aids. Mayo Clinic asserted that Saunders and her doctor exchanged written notes at a neurological appointment in July 2011 and that Saunders relied on Branden to interpret at her final pre-natal appointment in January 2011. "The type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." 28 C.F.R. § 36.303(c)(1)(ii) (2014).[3] According to

---

[3]  Opposing Mayo Clinic's argument about Branden interpreting for Saunders, Plaintiffs cited 28 C.F.R. § 36.303(c)(2) (2014), which states that "[a] public accommodation shall not require an individual with a disability to bring another individual to interpret for him or her," and 28 C.F.R. § 36.303(c)(3) (2014), which states that "[a] public accommodation shall not rely on an adult accompanying an individual with a disability to interpret or facilitate communication" except under certain circumstances. The provisions cited took effect on March 15, 2011, after Saunders's final pre-natal appointment. The Department of Justice asserted that the provisions of § 36.303(c) that took effect on March 15, 2011, "do not impose new obligations on places of public accommodation." 28 C.F.R. pt. 36, app. A (2014). Instead, the provisions "simply codif[ied] the Department's longstanding positions." *Id.*

9

Dr. Shepard-Kegl, Saunders reads English at "the sixth-grade level" and has the potential to read at a higher level if the subject matter is familiar. Branden's ability to read lips is limited. Whether Mayo Clinic furnished appropriate, alternative auxiliary aids presents an issue of fact that may not be resolved at this stage. *See Chisolm*, 275 F.3d at 327.

Finally, Mayo Clinic asserted the summary judgment is appropriate because "Plaintiffs cannot direct the Court to a single instance where they were denied the benefits of [its] services as a result of a breakdown in communication caused by Rasmusson." There is evidence in the record of miscommunications and failures to communicate arising out of Mayo Clinic's provision of Rasmusson to interpret. The Court rejects Mayo Clinic's argument. *See Argenyi*, 703 F.3d at 451; *Liese v. Indian R. Cnty. Hosp. Dist.*, 701 F.3d 334, 343 (11th Cir. 2012) ("[T]he proper inquiry is whether the auxiliary aid that a hospital provided to its hearing-impaired patient gave that patient an equal opportunity to benefit from the hospital's treatment.").

*Relief under the ADA or the Rehabilitation Act*

Mayo Clinic asserted that summary judgment in its favor is warranted because Plaintiffs cannot demonstrate that they are entitled to either form of relief available under Title III of the ADA or Section 504 of the Rehabilitation Act. "Title III of the ADA does not provide for private actions seeking damages . . . ." *Stebbins v. Legal Aid of Ark.*, 512 F. App'x 662, 663 (8th Cir. 2013) (per curiam). A private party may seek injunctive relief under Title III of the ADA. 42 U.S.C. § 12188(a)(1) (2012); *Stebbins*, 512 F. App'x at 663. A plaintiff may seek injunctive relief and damages under Section 504 of the Rehabilitation Act. 29 U.S.C. § 794a(a)(2) (2012). Compensatory damages may be

awarded under Section 504 to a plaintiff who shows intentional discrimination. *Meagley v. City of Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011). A showing of deliberate indifference suffices. *Id.*

According to Mayo Clinic, Plaintiffs lack standing to seek injunctive relief. "Standing to seek injunctive relief requires a plaintiff, *inter alia*, to show a likelihood of a future injury." *Meuir v. Greene Cnty. Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007); *see Elizabeth M. v. Montenez*, 458 F.3d 779, 784 (8th Cir. 2006) ("To have Article III standing to seek prospective relief, plaintiffs must show they are likely to suffer future injury that will be remedied by the relief sought."). Plaintiffs live approximately one hour away from Mayo Clinic. Saunders last sought treatment at Mayo Clinic in July 2011, approximately two years before Plaintiffs brought this action. Branden has never been a patient at Mayo Clinic. Although Plaintiffs asserted that they would be able to return to Mayo Clinic to receive prenatal care during future pregnancies if the Court ordered Mayo Clinic to provide effective communication, Plaintiffs are unaware of how the interpretation services that Mayo Clinic provides have changed since they last used Mayo Clinic. Rasmusson, as well as another interpreter about whom Saunders complained, are no longer employed at Mayo Clinic. Administrative personnel with whom Plaintiffs interacted about Mayo Clinic's provision of interpreters either no longer work at Mayo Clinic or no longer work at its location in Rochester. The clinic requires its interpreters to have a certification that is more advanced than the one that Rasmusson had. Plaintiffs have not demonstrated a likelihood of future injury. Thus, the Court concludes that Plaintiffs lack standing to seek injunctive relief. The Court dismisses their

claim under Title III of the ADA, as well as their claim under Section 504 of the Rehabilitation Act insofar as they seek injunctive relief. *See McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1145-46 (11th Cir. 2014).

As to damages, Mayo Clinic repeatedly sent Rasmusson to interpret for Saunders notwithstanding longstanding and unwavering complaints about Rasmusson's ability to interpret. Viewing the record in the light most favorable to Plaintiffs, the Court concludes that they have submitted evidence that raises a genuine issue of material fact as to whether Mayo Clinic intentionally discriminated against them. *See Meagley*, 639 F.3d at 389. Insofar of Mayo Clinic sought summary judgment on Plaintiffs' claim under Section 504 of the Rehabilitation Act for damages, the Court denies the motion.

*Branden*

Finally, Mayo Clinic briefly argued that Branden "lacks separate standing" because he "cannot direct the Court to a single place in the record where [he] alleges that, based on his own disability or his association with Saunders, he was denied the benefits of [its] services." Mayo Clinic noted that he wore hearing aids to Saunders's appointments and "was purportedly able to monitor [its] interpreters' signing for Saunders." According to Branden's deposition testimony, a hearing aid afforded him a limited ability to hear, and his ability to read lips is limited. Given the alleged miscommunications, failures to communicate, and his limitations, the Court rejects Mayo Clinic's argument that Branden lacks standing to sue. *See Liese*, 701 F.3d 342-44.

**Conclusion**

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Plaintiffs' Motion to Strike Defendant's Expert Witness, Bruce L. Adelson, Esq. [Docket No. 34] is GRANTED IN PART and DENIED IN PART.

2. Mayo Clinic's Motion for Summary Judgment [Docket No. 41] is GRANTED IN PART and DENIED IN PART.

3. Mayo Clinic's Motion to Exclude <u>Portions</u> of Expert Testimony [Docket No. 49] is DENIED.

4. Mayo Clinic's Motion to Strike Affidavits [Docket No. 76] is DENIED.

Dated: February 24, 2015

s/Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge